Taylor, *et al. vs.* Brown, *et al.*

*Frank C. Norwood, State's Attorney for Frederick County,* for the appellant.

*Milton G. Urner,* for the appellee.

(Decided 28th May, 1886.)

---

MARTHA ANN TAYLOR, and others *vs.* WILLIAM BROWN, SR., and others.

*Reversal—Husband and Wife—Evidence.*

To justify the Appellate Court in reversing the judgment appealed from, it must appear that the evidence objected to and excluded, worked an injury to the appellant.

In determining whether certain money in controversy belonged to the wife, or to her husband, the will of the wife in which she

undertook to dispose of the money as her own, is not admissible as against the husband.

While the declarations of a wife, to the effect that certain money in controversy belonged to her husband, are admissible on the ground of being against her interest, declarations made at another time in her own interest, are not admissible by way of rebuttal.

Where money belonging to a married woman as her separate estate, is appropriated by the husband to his own use, with her knowledge and consent, the law does not, from such appropriation, imply a promise on the part of the husband to repay it.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court. The Orphans' Court of Baltimore City in sending issues to the Court of Common Pleas, to be tried by a jury, ordered that Martha Ann Taylor and others should be plaintiffs, and William Brown, Senior, and others should be defendants.

*First and Second Exceptions* sufficiently stated in the opinion of the Court.

*Third Exception.*—The defendants offered the five following prayers:

1. That the will of Sarah A. Brown, having been only offered in evidence for the purpose of showing that the witness, William J. Taylor, was a competent witness, it cannot be considered by the jury in passing upon any of the issues in this case.

2. That the evidence of the witness, William J. Taylor, as to the conversation had by him with the defendant, William Brown, after the death of Sarah Ann Brown, in reference to the money received by said William Brown from Templeman, being the proceeds of the Creagh mortgage, be excluded from the consideration of the jury.

3. That if the jury find from the evidence that the defendant, William Brown, with the knowledge and consent of his wife, came into the possession of any of the moneys of his wife, then, in the absence of an express promise to

return, or to account to her for the same as her separate property, the law does not raise any implied promise from such a taking and using, to repay the same.

4. That even if the jury find from all the evidence in the cause, that the sum of money which wâs on deposit in the Eutaw Savings Bank at the time of the death of Sarah Ann Brown, was part of the price paid by the city upon property taken under condemnation proceedings, and that the title to said property stood in the name of Sarah Ann Brown, his wife, nevertheless if they further find that with her consent and full knowledge the same was received from the city and paid over to her husband, and was taken possession of by him, and that she recognized the money to be rightfully his, and acquiesced in his assumption of dominion over it; and that afterwards the same was deposited in said bank in their joint names, payable to the order of either of them, or to the survivor, then, in the absence of an express promise on his part to treat the same as her separate property, he had the right to draw the same after her decease as his own money, and the verdict of the jury must be for the defendants on the first issue.

5. That it is a question of fact to be determined by the jury from all the facts and circumstances, and from the whole course of the conduct and dealings between the husband and wife in connection with the declarations, acts and admissions of the wife, relating to the property which stood in her name, and to the beneficial interest of her husband therein, and to his efforts in acquiring the same, (if they shall find any such acts, declarations or admissions,) whether the said William Brown got the possession and control of the sums of money mentioned in the declarations, or either of them, with the knowledge and consent of his wife; and if with her knowledge and consent he took possession of them, or either of them, and used and appropriated it as his own, then for any such

sums as he so took and appropriated with her knowledge and consent, the plaintiffs are not entitled to recover, unless and only in respect of such sum as they shall find that he expressly promised to repay, or to appropriate to her separate use, and that the law does not imply from the husband's using the wife's money for his own purposes with her consent, a promise to refund, nor is the relation of debtor and creditor thereby established between them, as it would be under the same circumstances as between other persons.

The plaintiffs offered the two following prayers:

1. That if the jury find that the money deposited in the Eutaw Savings Bank in the manner given in evidence, was, at the time it was so deposited, the property of Mrs. Sarah Ann Brown, then the entries in the Bank book, namely, "and the survivor of them, subject to the order of either," do not give title to William Brown, either before or at her death.

2. That even if the jury find the facts mentioned in the defendants' third and fifth prayers, that unless the said wife knew that said money was so taken possession of by her husband, with the intention of keeping it as his own, and that at that time, or at any other time, she acquiesced in his so keeping possession, then the taking of such possession cannot affect her title to the same; if the jury find from all the evidence in the cause that she had such title.

The Court (PHELPS, J.) granted the prayers of the plaintiffs and defendants. The plaintiffs excepted. The jury found for the defendants on both issues. The plaintiffs appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, RITCHIE, and BRYAN, J.

*Benjamin Kurtz,* and *E. Otis Hinkley,* for the appellants.

*Bernard Carter*, for the appellees.

ROBINSON, J., delivered the opinion of the Court.

The following issues were sent by the Orphans' Court of Baltimore City to the Court of Common Pleas for trial:

1st. Whether the sum of $6588.07, which at the time of the death of Sarah Ann Brown, was deposited in the Eutaw Savings Bank, or any part thereof belonged to her estate?

2nd. Whether the sum of $2063.63, being the proceeds derived from the sale of certain property mortgaged by John Creagh and wife to Sarah Ann Brown, was part of her personal estate?

At the trial of these issues, evidence was offered tending to prove that both of these sums belonged to Sarah Ann Brown, that an account was kept in the Eutaw Savings Bank in the *joint names* of *the* said *Sarah and her husband, William Brown,* and the survivor, and subject to the order of either; and that the sum of $6538.07, thus on deposit in the Bank, was paid on the order of the husband after the death of his wife.

On the other hand, evidence was offered on the part of the appellees, tending to prove that the money in question belonged to William Brown the husband; and further, that if the wife had any claim or title to the money, it was *paid to the husband and used by him with her knowledge and consent.*

During the trial, the appellants offered to prove by the witness Taylor, that a few days after the deposit of $5000 in the Savings Bank, he had a conversation with Mrs. Brown in the presence and hearing of her husband, in which conversation, she explained to witness why her husband's name had been placed upon the pass-book of the Bank, and to which explanation no objection whatever was made by the husband. The $5000 thus deposited was part of the sum of $6538.07 paid to the husband after the death

of the wife; and any explanation by her made in the presence and hearing of her husband, why it was deposited in their joint names, and payable to the survivor, was clearly admissible. If no objection was made by him to such explanation, his silence might fairly be construed as an acquiescence in the truth of the statement made by the wife. And we do not see on what grounds the evidence was excluded. But the bill of exception does not set forth the *explanation,* to prove which the witness was offered, and for all that appears to the contrary, the *explanation* may have been wholly unimportant or immaterial. To justify us in reversing the judgment, it must appear that the evidence objected to and excluded worked an injury to the appellants. As was said in *Lawson vs. Price,* 45 *Md.,* 123, "Before we can reverse the ruling excepted to, we must be able to see that the party really has ground for exception and may have been injured by what was done. For aught that appears, the answer of the witness may have been more favorable to the appellant than to the appellee." So here it is impossible for us to say that the appellants were in any manner prejudiced by the ruling below, because the record does not set forth either the purport or effect of the explanation offered in evidence.

We see no objection to the ruling in the second exception. The real issue before the jury, was whether the money in controversy belonged to Sarah Ann the wife, or to her husband; and the will of the wife in which she undertook to dispose of the money as her own, was certainly not admissible as against the husband. It was nothing more or less than a declaration on her part, that the money belonged to her; to make it admissible, it must appear that the husband with full knowledge, acquiesced in, or consented to, such disposition on the part of his wife. The record does show that the will was executed in his presence, but it does not appear that it was read in his

presence, or that he had any knowledge of its contents. In *Edelin vs. Sanders, Ex'r of Sanders*, 8 *Md.*, 118, the objection was to the admission on the part of the defendant of his testator's will, whereby he disposed of certain property as his own, and which the plaintiff alleged had been conveyed to him (the testator) in secret trust. In disposing of this objection the Court said, " under no state of circumstances was the will of William Sanders competent testimony. To allow it to be given in evidence, would be but to permit a party to testify in his own case and in his own behalf." And although a party is under our Evidence Act a competent witness in his own case, yet on no principle can his unsworn declaration in his own behalf, not made in the presence of the party to be affected thereby, be offered in evidence. But it is argued that if the will be not admissible as evidence in chief, it was admissible by way of rebutting the testimony on the part of the appellees. They had given in evidence the declarations of the will, to the effect that the money in controversy belonged to her husband. Such declarations were admissible on the ground of being declarations against *her interest*, but her declarations made at another time in her own interest, are not admissible by way of rebuttal.

We see no objection to the several instructions granted by the Court. They presented the law of the case fairly to the jury. If the money in controversy did in fact belong to the wife as her separate estate, and was appropriated by the husband to his own use, with her knowledge and consent, the law does not from such appropriation imply a promise on the part of the husband to repay it. To create a liability on his part, there must be an express promise to repay or return the same.

Then again, although the money on deposit in the Savings Bank, was part of the price paid by the City of Baltimore for the condemnation of property belonging to the wife, yet if the same was paid by the city to the husband

with the wife's knowledge and consent, and she recognized it as belonging to him, and acquiesced in his dominion and control over it, and the money was afterwards deposited in the Bank in their joint names, payable to the order of either of them, or to the survivor, then in the absence of an express promise by the husband to treat the same as her separate estate, he had the right, upon her death, to draw the money thus deposited, as his own.

So finding no error in the rulings of the Court which will justify us in reversing the judgment, it must be affirmed.

*Judgment affirmed.*

(Decided 22nd June, 1886.)